John F. Cove, Jr. (SBN 212213)
john.cove@shearman.com
Emily V. Griffen (SBN 209162)
emily.griffen@shearman.com
SHEARMAN & STERLING LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: 415-616-1100
Facsimile: 415-616-1199

*Attorneys for Defendant Mizuho Bank, Ltd.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN CARMEL,<br><br>Plaintiff,<br><br>v.<br><br>MIZUHO BANK, LTD. and MARK KARPELES,<br><br>Defendants. | Case No. 2:18-CV-02483-JAK-E<br><br>DEFENDANT MIZUHO BANK LTD.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT, OR, ALTERNATIVELY, TO STRIKE ALL CLASS ACTION ALLEGATIONS<br><br>DATE:  October 22, 2018<br>TIME:  8:30 a.m.<br>PLACE: Courtroom 10B<br>JUDGE: Hon. John A. Kronstadt |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT ..............................................................................................................2

    I.    The Court Lacks Personal Jurisdiction Over Mizuho ...........................2

    II.   The Complaint Fails To State A Claim ................................................6

          A.   Carmel Has Not Alleged That Mizuho Knew About His Contract With Mt. Gox ..................................................7

          B.   Carmel Has Not Alleged Any Intentional Act By Mizuho Designed To Induce A Breach Of His Contract With Mt. Gox ..................................................................................7

          C.   Carmel Has Not Alleged That Mizuho Caused Mt. Gox To Breach Its Contract With Carmel .................................8

          D.   Mizuho's Conduct Was Justified ................................................9

    III.  Carmel Cannot Pursue A Class Claim Against Mizuho .....................10

CONCLUSION .........................................................................................................10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
  751 F.3d 796 (7th Cir. 2014) ..................................................................... 5

*Asberry v. Money Store*,
  2018 WL 3807806 (C.D. Cal. Aug. 8, 2018) ........................................... 10

*Barantsevich v. VTB Bank*,
  954 F. Supp. 2d 972 (C.D. Cal. 2013) ....................................................... 2

*China Agritech, Inc. v. Resh*,
  138 S. Ct. 1800 (2018) ......................................................................... 2, 10

*Fierro v. Landry's Rest. Inc.*,
  232 Cal. Rptr. 3d 651 (Ct. App. 2018) .................................................... 10

*Greene v. Mizuho Bank, Ltd.*,
  169 F. Supp. 3d 855 (N.D. Ill. 2016) ........................................................ 6

*Greene v. Mizuho Bank, Ltd.*,
  2018 WL 2735112 (N.D. Ill. June 7, 2018) .............................................. 8

*Lack v. Mizuho Bank, Ltd.*,
  No. 2:18-cv-00617-RGK-GJS (C.D. Cal. June 19, 2018) ........................ 4

*Morrill v. Scott Fin. Corp.*,
  873 F.3d 1136 (9th Cir. 2017) ................................................................... 5

*Pearce v. Mizuho Bank, Ltd.*,
  2018 WL 4094812 (E.D. Pa. Aug. 27, 2018) ................................... 2, 4, 6

*Trindade v. Reach Media Grp., LLC*,
  2013 WL 3977034 (N.D. Cal. July 31, 2013) ........................................... 8

*United States Surgical Corp. v. Origin Medsystems, Inc.*,
  1993 WL 379579 (N.D. Cal. Jan. 12, 1993) .............................................. 7

*Walden v. Fiore*,
  51 U.S. 277 (2014) ................................................................................ 4, 5

**Statutes**

Cal. Civ. Code § 2332 (West 1987)..................................................................................7

## PRELIMINARY STATEMENT

In our opening brief, we showed that Mizuho is not subject to personal jurisdiction because all of Mizuho's claims-related activities occurred in Japan and the Complaint does not and cannot allege that Mizuho committed any intentional act expressly aimed at California. We also showed that Carmel fails to state a claim for tortious interference because he does not plausibly allege that Mizuho (1) knew that he had a contract with Mt. Gox or that he was even a Mt. Gox user; (2) intentionally induced a breach of that contract; or (3) caused any loss that Carmel suffered.

Carmel seeks to avoid dismissal by arguing that Mizuho purposefully directed its actions towards "California and Californian Mt. Gox users like Carmel, as part of its scheme to disrupt Mt. Gox's relationship with its American users." Plaintiff's Opposition to Defendant's Motion to Dismiss the Complaint ("Opp.") at 9. That argument is contradicted by the factual allegations of the Complaint, which clearly state that Mizuho's decision in June 2013 to terminate outbound wire transfer services for Mt. Gox was precipitated by news reports that Mt. Gox was under investigation by regulatory authorities for illegal activities. The Complaint does not include any facts suggesting that Mizuho's decision was intentionally directed at California or Carmel, or that Mizuho even knew who Carmel was or knew that he made a withdrawal request to Mt. Gox at any time before he filed this suit. *See* Imaizumi Decl. ¶ 8. Without those critical factual allegations, the Court cannot conclude (as it must to find that it has personal jurisdiction here) that Mizuho specifically targeted its conduct at Carmel in California, and cannot find (as it must to conclude that Carmel has stated a claim) that Carmel has pleaded that Mizuho knew of or induced a breach of his contract with Mt. Gox. Clearly, Mizuho could not have targeted its conduct at an individual it never heard of nor could it have tortiously interfered with that unknown individual's unknown contract with Mt. Gox.

Carmel accordingly has not alleged facts (1) supporting the exercise of personal jurisdiction over Mizuho or (2) giving rise to a plausible inference that

Mizuho tortiously interfered with his contract with Mt. Gox. For either of those independently sufficient reasons, this Court should dismiss the Complaint with prejudice. Or, at a minimum, the Court should strike Carmel's class allegations against Mizuho because the purported class claims are time barred in light of *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018).

## ARGUMENT

### I. The Court Lacks Personal Jurisdiction Over Mizuho

In our opening brief, we showed that Carmel has not alleged and cannot allege facts supporting specific personal jurisdiction over Mizuho. As set forth in the uncontested Imaizumi Declaration, all Mizuho conduct at issue occurred in Japan, and the Complaint fails to allege facts, as opposed to conclusory assertions, showing that any of Mizuho's alleged activity was "purposefully directed" or "expressly aimed" at California. The only link between Carmel's claim and California is that Carmel lives in California and alleges he suffered foreseeable injury there. Under Supreme Court and Ninth Circuit precedent, these bare allegations do not provide a sufficient basis for personal jurisdiction. *See* Br. at 6-8. Because Carmel has neither alleged facts establishing a prima facie basis for personal jurisdiction, nor come forward with credible evidence controverting the evidence presented by Mizuho, he has not met his burden. *See Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 982, 994 (C.D. Cal. 2013) (no personal jurisdiction where defendant submitted declaration opposing jurisdiction and plaintiff "proffer[ed] no evidence of any contacts").

Since we filed our opening brief, a court in the Eastern District of Pennsylvania granted an almost identical motion and dismissed for lack of personal jurisdiction an almost identical claim brought by a Pennsylvania resident based on almost identical facts and allegations. *See Pearce v. Mizuho Bank, Ltd.*, 2018 WL 4094812 (E.D. Pa. Aug. 27, 2018). In that case, the Pennsylvania plaintiff—represented by the same counsel as Carmel—contended that Mizuho "made the decision to interfere with his contract with Mt. Gox *precisely because* he was located in Pennsylvania." *Id*. at *5

(emphasis in original). The Pennsylvania court rejected the Pennsylvania plaintiff's argument, explaining that "the alleged act at the heart of Pearce's claim is a negative action. By not fulfilling the withdrawal request, Mizuho failed to direct any activity at Pennsylvania." *Id*. Carmel makes the exact same argument here (Opp. at 8, 9) and the Court should reject it for the same reasons cited by the Pennsylvania court.

Carmel (like Pearce) argues that "Mizuho directed tortious conduct at him based on his California residency, as part of its larger scheme to interfere with the contracts between Mt. Gox and its customers in the United States." Opp. at 7. But Carmel cannot point to a single factual assertion in the Complaint to support his conclusory statement that Mizuho's supposed "scheme" was directed at California residents. To the contrary, the Complaint alleges that Mizuho wanted to sever its banking relationship with Mt. Gox because of press reports that Mt. Gox was under investigation for illegal activity, including money laundering. *See* Compl. ¶¶ 22-23. The Complaint does not allege that Mizuho's decision to distance itself from Mt. Gox had anything to do with California (or Carmel) or any conduct there. And, contrary to Carmel's unsupported assertion that if he had been "one of Mt. Gox's Japanese customers, his contract would not have been so targeted" (Opp. at 8), Mizuho ceased *all* outbound wire transfer services to Mt. Gox, domestic and international alike. Declaration of Ryuta Shiratori ¶ 2.[1] Thus, Carmel's assertions that Mizuho intentionally targeted Mt. Gox users in the United States and Carmel in California are factually incorrect.

Similarly, the Complaint does not support Carmel's assertion that "Mizuho intentionally acted to prevent Mt. Gox from fulfilling its contract with Carmel." Opp. at 9. According to the Complaint, by the time Carmel made his withdrawal request to Mt. Gox in November 2013, Mizuho had not been accepting outbound wire transfer

---

[1] This declaration is submitted solely for the purpose of responding to a new contention made by Carmel for the first time in his Opposition.

requests from Mt. Gox for nearly six months. Compl. ¶¶ 25, 46. And, as noted above, the Complaint does not allege any factual basis to infer that Mizuho knew that Carmel was a Mt. Gox customer, or knew or had any reason to know that he made any withdrawal requests to Mt. Gox after Mizuho stopped accepting withdrawal requests from Mt. Gox. In fact, it is undisputed that "*Mizuho had no direct or indirect contact with and no way of knowing the identity or address of any Mt. Gox customer who made a request to Mt. Gox to withdraw currency after June 20, 2013.*" Imaizumi Decl. ¶ 8 (emphasis added). Consequently, Carmel's contention that "Mizuho did not process [his withdrawal] request *solely* because [of] Carmel's [California] residency" (Opp. at 9) is neither plausible nor reconcilable with the allegations of his Complaint.[2] Indeed, this deficiency was key to the Pennsylvania court's conclusion that the Pennsylvania plaintiff had not alleged that Mizuho expressly aimed any conduct at Pennsylvania: "If Mizuho never received Pearce's withdrawal request from Mt. Gox, it would be impossible for it to know that Pearce would suffer harm in Pennsylvania because of Mizuho's policy. Likewise, if Mizuho never received Pearce's withdrawal request, there could be no specific activity aimed at Pennsylvania." *Pearce*, 2018 WL 4094812, at *6.

Carmel's arguments also collapse because they contradict *Walden v. Fiore*, 51 U.S. 277 (2014). In *Walden*, which also involved an intentional tort claim, the

---

[2] The absence of any factual allegations or evidence to support the existence of a purported scheme designed by Mizuho to target California residents distinguishes this case from the cases on which Carmel relies (Opp. at 7-8). Moreover, unlike the plaintiff in *Lack v. Mizuho Bank, Ltd.*, No. 2:18-cv-00617-RGK-GJS (C.D. Cal. June 19, 2018), Carmel does not allege that he made any deposits to Mt. Gox's account at Mizuho's branch in Japan. Consequently, Carmel's contention that Mizuho "'purposefully exploited the California market' in accepting deposits from Mt. Gox users 'while actively concealing it policy' of not allowing withdrawals'" (*id.* at 10 n.4) cannot support the exercise of jurisdiction over Mizuho here because, unlike Lack, Carmel does not purport to allege a claim arising from or relating to a deposit accepted by Mizuho into Mt. Gox's account from Carmel's account in California.

Supreme Court held that a defendant's out-of-forum activity is "expressly aimed" at the forum only if "the relationship [between the defendant and the forum] arise[s] out of contacts that the defendant *himself* creates with the forum State," not just "with persons who reside there." *Walden*, 571 U.S. at 284-85 (emphasis in original). Moreover, "the defendant's suit-related conduct must create a *substantial connection* with the forum State." *Id.* (emphasis added). Thus, a plaintiff's residence in the forum and the foreseeability that the plaintiff would suffer harm in the forum, even taken together, are not enough in the absence of specific facts showing a deliberate targeting of the forum state. *Walden*, 571 U.S. at 289; *see also Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1144-45 (9th Cir. 2017) (Kronstadt, J.). Because Carmel did not, and cannot, allege that Mizuho *itself* created a substantial connection with California, there is no basis for specific personal jurisdiction over Mizuho.

Carmel's jurisdictional theory—that, by taking action (or more accurately, inaction) that allegedly could foreseeably harm Mt. Gox users in the United States, Mizuho "expressly aimed" its conduct at California, where it supposedly knew Carmel was located—would render a foreign defendant subject to suit in every jurisdiction where the effects of its actions were felt directly or indirectly. Carmel's theory would result in a huge expansion of federal jurisdiction that is directly contrary to the reasoning and holding in *Walden*. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801-02 (7th Cir. 2014) (rejecting such a broad theory of "de facto universal jurisdiction" because it "runs counter" to the approach the Supreme Court reaffirmed in *Walden*).[3]

---

[3] The cases cited in support of Carmel's assertion that conduct "directed at users in other states does not detract from the Court's analysis of [Mizuho's] contacts with California" (Opp. at 9 n.3) involved personal jurisdiction based on the defendants' sales of products or services that gave rise to the claims in the forum state. Here, Carmel has not alleged that Mizuho sold any products or services to him or any other in-state residents, let alone asserted a claim based on such non-existent sales.

REPLY MEM. OF POINTS & AUTHS. 5  
I/S/O MOTION TO DISMISS OR STRIKE

CASE NO. 2:18-CV-02483-JAK-E

Finally, Carmel's attempt to evade the decision in *Greene v. Mizuho Bank, Ltd.*, 169 F. Supp. 3d 855 (N.D. Ill. 2016), is also unsuccessful. The Illinois court dismissed Greene's tortious interference with contract claim against Mizuho for lack of personal jurisdiction because Greene, like Carmel, did not make any deposits into Mt. Gox's account at Mizuho, or pay any transaction fees, and therefore Mizuho had "no transactional contacts with Greene at all." *Id*. at 865. Carmel attempts to distinguish his case by saying that "Greene did not even attempt to withdraw fiat currency from Mt. Gox." Opp. at 10. But an attempt to withdraw fiat currency from *Mt. Gox* still does not constitute contact with Mizuho. In any event, the *Greene* court said nothing about whether Greene attempted to withdraw fiat currency from Mt. Gox or whether that would give rise to transactional contacts with Mizuho; instead, the court contrasted Greene with another plaintiff (Lack) who allegedly sent wire transfers to Mizuho. *Id*. Like Greene, but unlike Lack, Carmel never sent any wire transfers even indirectly to Mizuho. Carmel's withdrawal request to Mt. Gox therefore did not involve any "transactional contacts" with Mizuho, and he pleads no facts to the contrary. In short, Carmel's claim is substantively identical to Greene's or Pearce's claims against Mizuho. *See Pearce*, 2018 WL 4094812, at *5 ("the facts in Pearce's claim are more aligned to Greene's because Mizuho never engaged in any transactional contact with Pearce"). Just as their claims were dismissed for lack of personal jurisdiction, Carmel's claim should be dismissed, too.

## II.     The Complaint Fails To State A Claim

As shown in our opening brief, Carmel also fails to plead a valid claim for tortious interference. His attempt to do so is missing three essential pieces: he does not plead that Mizuho (1) knew about his contract with Mt. Gox, (2) acted intentionally to induce breach of his Mt. Gox contract, or (3) caused the damages Carmel claims he suffered. His failure to plead any one of these three elements is a sufficient basis to grant the motion to dismiss. In addition, the Complaint on its face plainly pleads that Mizuho's conduct was justified, which is a complete defense to

tortious interference in California, warranting dismissal for yet another reason.

### A. Carmel Has Not Alleged That Mizuho Knew About His Contract With Mt. Gox

Carmel concedes that Mizuho's knowledge of his contract with Mt. Gox is essential for his tortious interference claim. Opp. at 11. But, as shown in our opening brief, allegations suggesting generalized knowledge of a plaintiff's contract is insufficient to plead a tortious interference claim in California (Br. at 11), and Carmel cites no on-point California authority to support the "constructive knowledge" or "willful blindness" standards he seeks to impose (Opp. at 12-13).[4] In short, Carmel's contention that Mizuho "had reason to know and should have known about Carmel's contract with Mt. Gox" based on Mizuho's alleged general knowledge of Mt. Gox's business and the services provided to its users (*id.*) applies a standard of "knowledge" inconsistent with California law. Even if Mizuho had general knowledge that Mt. Gox might have "terms of use" that would govern Mt. Gox's relationships with its customers, the Complaint provides no basis to conclude that Mizuho knew that Carmel was a Mt. Gox user or knew the terms of his contract with Mt. Gox. Carmel's suggestion that Mizuho was "willfully blind" or "avoided learning about Carmel's individual contract . . . because of its unilateral decision to stop processing withdrawal requests" (*id.* at 14) is thus absurd and illogical.

### B. Carmel Has Not Alleged Any Intentional Act By Mizuho Designed To Induce A Breach Of His Contract With Mt. Gox

All Mizuho is alleged to have done is exercise its right to change its

---

[4] *United States Surgical Corp. v. Origin Medsystems, Inc.*, 1993 WL 379579, at *2 (N.D. Cal. Jan. 12, 1993), cited by Carmel (Opp. at 12), is inapposite because in that case the court determined that even if a defendant did not have actual knowledge of the contract at issue, such knowledge was imputed to him by California Civil Code § 2332 (West 1987) because he was an officer and member of the corporation's board of directors. The same cannot be said for Mizuho here.

relationship with its banking customer. Carmel does not plead any facts that would support any inference that Mizuho knew that doing so would affect Mt. Gox's customers. In particular, Carmel does not plead that Mizuho had any reason to believe that Mt. Gox would be unable to fulfill its customers' withdrawal requests through other banks. Carmel did not make that allegation because, as his counsel knows, and as the Illinois court found after reviewing the evidence related to this dispute, Mt. Gox did, in fact, send money to its U.S. customers using other banks. *Greene v. Mizuho Bank, Ltd.*, 2018 WL 2735112, at *2 (N.D. Ill. June 7, 2018) (from June 2013 until February 2014, "Mt. Gox account holders in the United States could withdraw fiat currency using other intermediaries"). Carmel thus failed to plead any plausible basis on which to infer that Mizuho knew that interference with Carmel's unknown contract with Mt. Gox was certain or substantially certain to occur because of Mizuho's suspension of outbound wire transfer services to Mt. Gox. *See Trindade v. Reach Media Grp., LLC*, 2013 WL 3977034, at *16 (N.D. Cal. July 31, 2013).

  C. Carmel Has Not Alleged That Mizuho Caused Mt. Gox To Breach Its Contract With Carmel

Carmel claims that "because of Mizuho's conduct, Mt. Gox could not transmit the money to Carmel when he asked for it." Opp. at 1; *see also id*. at 15. But, as Carmel and his counsel know, this conclusory assertion is unsupported by any factual allegation in the Complaint and indeed is not true, as the *Greene* court found. *Greene*, 2018 WL 2735112, at *2. As explained above, Mt. Gox used other banks and processors to send money to other Mt. Gox customers and could have, if it wanted to, also used them to wire money to Carmel (or to send him a check). As the *Greene* court explained, Mizuho was not Mt. Gox's exclusive sender and receiver of wire transfers, "as Mt. Gox relied at different points in time on other financial institutions and payment processors, including Japan Post Bank, Dwolla, and OK Pay, to facilitate fiat currency deposits and withdrawals." *Id*. Carmel provides no basis to infer that Mt. Gox could not use its other banks to satisfy its users'

REPLY MEM. OF POINTS & AUTHS. 8
I/S/O MOTION TO DISMISS OR STRIKE
      CASE NO. 2:18-CV-02483-JAK-E

1  withdrawal requests after Mizuho stopped its outbound wire services, nor does he (or
2  could he) allege that Mizuho provided any unique or specialized service.  Mt. Gox's
3  choice not to wire funds through another bank (or simply send Carmel a check) was
4  its decision (perhaps because Mt. Gox, which sought bankruptcy protection in
5  February 2014, was already low on funds) and had nothing to do with Mizuho.

6       Moreover, Carmel cannot rebut the argument that Karpeles (not Mizuho) was
7  the cause of his alleged loss by claiming that the argument "merely goes to who is
8  *more* liable for [Carmel's] losses . . . not whether Mizuho can be held liable at all."
9  Opp. at 16.  "Who is more liable" does not come into play because Carmel does not
10 plausibly allege that Mizuho had anything to do with Mt. Gox's collapse or the loss
11 of his funds.  Br. at 13.  The cause of Carmel's alleged loss is that Mt. Gox could not
12 (or chose not to) pay him, not that one channel for Mt. Gox to transmit funds – a wire
13 transfer from its account at Mizuho – was not available when he asked for his money.

14     D.    <u>Mizuho's Conduct Was Justified</u>

15      As shown in our opening brief, the Complaint plainly alleges that Mizuho
16 exercised its right to change its relationship with its banking customer upon learning
17 that its customer was under investigation for money laundering and other illegal
18 activities.  Thus, on its face, the Complaint establishes that Mizuho's conduct was
19 justified.  Carmel seeks to avoid the consequence of his own pleading by asserting
20 that Mizuho's conduct was not justified because Mizuho supposedly "broke its own
21 contract with Mt. Gox" and "deliberately concealed" that it was no longer accepting
22 wire transfer instructions from Mt. Gox users.  Opp. at 17.  But the Complaint does
23 not allege any breach by Mizuho of its contract with Mt. Gox nor can it point to a
24 single fact that was concealed from Mt. Gox users.  As discussed in our opening brief
25 (at 4), Mt. Gox routinely communicated with its customers about problems on its
26 platform—for example, by posting notices on its website regarding withdrawal
27 delays.  *See* Fortinsky Decl. Exs. 1-6; Compl. ¶ 26.  In short, the Complaint
28 affirmatively establishes that Mizuho's conduct was justified.

### III. Carmel Cannot Pursue A Class Claim Against Mizuho

As shown in our opening brief (Br. at 15-16), Carmel's purported class action was filed more than two years after the applicable statute of limitations expired, and therefore cannot be maintained as a class action under the Supreme Court's recent decision in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2008). Carmel argues that *China Agritech* does not apply to claims based on California state law. Opp. at 18. But the sole case on which Carmel relies, *Fierro v. Landry's Rest. Inc.*, 232 Cal. Rptr. 3d 651 (Ct. App. 2018), does not support his contention.

In *Fierro*, the California Court of Appeals explained that because California state courts, unlike federal courts, allow immediate appellate review of an order denying class certification, tolling of class claims following denial of class certification promotes efficiency and economy of litigation. *Id*. at 663. By contrast, in federal court, where automatic immediate appellate review is not available regardless of whether the claim is based on state or federal law, efficiency and economy of litigation is not furthered by continuation of tolling for class claims. *Id*. Consequently, under the reasoning of *Fierro*, there is no basis on which to exempt Carmel's class claim from the holding in *China Agritech*. *See Asberry v. Money Store*, 2018 WL 3807806, at *8 (C.D. Cal. Aug. 8, 2018) (holding that California state-law-based class claims were not tolled under *China Agritech*).

### CONCLUSION

For the foregoing reasons, the Court should grant Mizuho's motion.

//
//
//
//
//
//
//

| | |
|---|---|
| DATED: September 17, 2018 | SHEARMAN & STERLING LLP |
| | /s/ John F. Cove, Jr. |
| | John F. Cove, Jr. (SBN 212213) |
| | Emily V. Griffen (SBN 209162) |
| | 535 Mission Street, 25th Floor |
| | San Francisco, CA  94105 |
| | Telephone:  (415) 616-1100 |
| | Facsimile:  (415) 616-1199 |
| | Email:  john.cove@shearman.com |
| | Email:  emily.griffen@shearman.com |
| | |
| | *Attorneys for Defendant Mizuho Bank, Ltd.* |