UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-02483 JAK (Ex) | Date | November 13, 2018 |
|---|---|---|---|
| Title | Jonathan Carmel v. Mizuho Bank, Ltd., et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

| Proceedings: | **(IN CHAMBERS) ORDER RE DEFENDANT MIZUHO BANK, LTD'S MOTION TO DISMISS (DKT. 17)** |
|---|---|

==JS-6: Defendant Mizuho Bank, Ltd. Only==

I.  <u>Introduction</u>

Johnathan Carmel ("Plaintiff") brought this putative class action on March 27, 2018 against Mizuho Bank, Ltd. ("Defendant" or "Mizuho") and Mark Karpeles ("Karpeles"). *See* Compl., Dkt. 1. Plaintiff advances individually and on behalf of others similarly situated, claims of negligence and fraud against Karpeles, and a claim of tortious interference against Mizuho. *See id.* The claims arise out of the collapse of the Mt. Gox Bitcoin Exchange ("Mt. Gox"), which allegedly resulted in the loss of hundreds of millions of dollars in both bitcoin[1] and fiat currency.[2] *Id.* ¶ 1.

On June 22, 2018, Mizuho filed a Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). Dkt. 17 ("Motion"). Mizuho argues that there is no personal jurisdiction in this District, and that the tortious interference claim is not sufficiently alleged. *See generally id.* In the alternative, the Motion seeks to have the class allegations stricken from the Complaint pursuant to Fed. R. Civ. P. 12(f). *Id.* at 20-21. Plaintiff filed an opposition to the Motion. Dkt. 32 ("Opposition"). Mizuho filed a reply. Dkt. 38 ("Reply").

A hearing on the Motion was held on October 22, 2018, and the matter was taken under submission. For the reasons stated in this Order, the Motion is **GRANTED**.[3]

---

[1] Bitcoin describes itself as a digital, peer-to-peer payment network that is "powered by its users with no central authority or middlemen," and is analogous to "cash for the Internet." *See* https://bitcoin.org/en/faq.

[2] "Fiat" currency, which is not defined in the complaint, has been described as traditional government-issued currency, or legal tender. *See* https://www.investopedia.com/terms/f/fiatmoney.asp.

[3] The Motion is brought only by Mizuho with respect to the tortious interference claim advanced against that entity. As noted below, Plaintiff has not served Karpeles with the Complaint, and he had not appeared.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-02483 JAK (Ex) | Date | November 13, 2018 |
|---|---|---|---|
| Title | Jonathan Carmel v. Mizuho Bank, Ltd., et al. | | |

## II.   **Background**

A.   Request for Judicial Notice

In Support of the Motion, Defendants request judicial notice of the following documents:

Ex. 1   June 20, 2013 article from MarketWatch entitled *Bitcoin Prices Have Stayed Afloat Amid the Fed-Fueled Storm, But Look Out Ahead*

Ex. 2   August 12, 2013 article from CoinDesk entitled *Withdrawals From Mt. Gox: Growing Pains or Banking Bottleneck?*

Ex. 3   September 4, 2013 article from The Washington Post entitled *The Slow Decline of Bitcoin's Biggest Exchange, In One Chart*

Ex. 4.   September 21, 2013 article from Bitcoin Magazine entitled *Mt. Gox USD Withdrawals To Take Up To 22 Months*

Ex. 5   Copy of statement from Mt. Gox website entitled "Statement Regarding Temporary Hiatus on U.S. Dollar Withdrawals," dated June 20, 2013, available at http://web.archive.org/web/20130811014059/https://www.mtgox.com/press_release20130620.html.

Ex. 6   Copy of statement from Mt. Gox website entitled "Statement on Resumption of Withdrawls and Improved Banking," dated July 4, 2013, available at http://web.archive.org/web/20130810181218/https://www.mtgox.com/press_release_20130704.html.

Ex. 7   May 7, 2018 article from CoinDesk entitled *Why Are the Feds Seizing Mt. Gox and Dwolla Funds?*

Dkt. 20 ("RJN").[4]

Pursuant to Fed. R. Evid. 201, a court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *In re Icenhower*, 755 F.3d 1130, 1142 (9th Cir. 2014) (quoting Fed. R. Evid. 201(b)).

Exhibits 1-4 and 7 are copies of news articles. The Ninth Circuit has confirmed that courts "may take judicial notice of publications," such as "newspapers, magazines, and books." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010). Accordingly, the RJN is **GRANTED** as to these documents. However, judicial notice of news articles is limited to "what was in the public realm at the time, not whether the contents of those articles were in fact true." *Id.*; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (judicial notice is appropriate as to the fact that certain statements were made and information was accessible to the public, but not as to the truth of those statements). Judicial notice of these articles is taken subject to these limitations.

Mizuho argues that the facts stated within the articles attached as Exhibits 1-4 are also subject to judicial notice under the incorporation by reference doctrine. *See* Dkt. 20 at 3. It permits the

---

[4]  The documents as to which judicial notice is sought are attached to the Declaration of Jerome Fortinsky. Dkt. 19 ("Fortinsky Decl.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-02483 JAK (Ex) | Date | November 13, 2018 |
| --- | --- | --- | --- |
| Title | Jonathan Carmel v. Mizuho Bank, Ltd., et al. | | |

incorporation of a document into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). The Ninth Circuit has recently addressed the limited circumstances within which a document can be incorporated by reference. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). *Khoja* recognized that documents can be incorporated by reference when the claims advanced in the complaint "necessarily depend" on the documents to be incorporated. *Id.*; *see also Knievel v. ESPN*, 393 F.3d 1068, 1073-76 (9th Cir. 2005) (incorporating by reference a photograph which formed the basis of a defamation claim in order to determine whether the photograph "is capable of sustaining a defamatory meaning"). However, "if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint. Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims." *Khoja*, 899 F.3d at 1002. Accordingly, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.* at 1003.

Exhibits 1-4, which are news articles relating to financial challenges faced by Mt. Gox, are relevant to the allegations in the Complaint, but do not form the basis of the tortious interference claim advanced against Mizuho. Thus, it is not necessary to consider them to show an element of the relevant cause of action. *See Knievel*, 393 F.3d at 1073-76. Accordingly, Exhibits 1-4 will not be incorporated by reference to the Complaint, and judicial notice of those documents is limited to "what was in the public realm at the time" they were published. *Von Saher*, 592 F.3d at 960.

Exhibits 5 and 6 are copies of web pages. "It is not uncommon for courts to take judicial notice of factual information found on the world wide web." *Paralyzed Veterans of Am. v. McPherson*, No. 06-cv-4670-SBA, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 9, 2008). Plaintiff has not objected to the authenticity of these web pages. Accordingly, the RJN is **GRANTED** as to Exhibits 5 and 6, subject to the same limitations regarding the truth of the statements contained therein.

B.     The Parties

Plaintiff is an individual resident of California. *See* Compl. ¶ 3. He is alleged to have lost money through his financial relationship with Defendants and Mt. Gox, an online Bitcoin exchange. *See id.* ¶¶ 2, 43-51.

Mizuho is a Japanese financial institution whose principal place of business is in Tokyo, Japan. *Id.* ¶ 5; *see also* Declaration of Yasuo Imaizumi ("Imaizumi Decl."), Dkt. 18 ¶¶ 2-3. The Complaint alleges that Mizuho conducts business worldwide, and has processed deposit and withdrawal transactions for Mt. Gox users located in California. Compl. ¶ 5.

Karpeles is alleged to be an individual citizen of France. *Id.* ¶ 4. He is allegedly the Chief Executive Officer of Mt. Gox, and its parent company, Tibanne KK. *Id.* It is alleged that Karpeles, as the primary owner and operator of Mt. Gox, caused users of Mt. Gox to lose more than $400 million through his negligence and fraud. *See id.* ¶ 1.[5]

---

[5] As noted, Karpeles has not been served in this action. *See* Dkts. 35, 36. Plaintiff reports that efforts to serve him are ongoing. *See* Dkt. 36. Accordingly, the analysis in this Order only addresses the issues raised by Mizuho.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-02483 JAK (Ex) | Date | November 13, 2018 |
|---|---|---|---|
| Title | Jonathan Carmel v. Mizuho Bank, Ltd., et al. | | |

      C.     Mt. Gox and its Banking Relationship with Mizuho

The Complaint alleges that Mt. Gox, which was established in 2009, claimed to be the "world's most established Bitcoin exchange." *Id.* ¶ 9. Mt. Gox interacted with users by hosting accounts, and permitting purchases and trades on its platform. *Id.* ¶¶ 10-13. The Complaint alleges that Karpeles "controlled all aspects of Mt. Gox's business from the ground up." *Id.* ¶ 14.

To participate on the Mt. Gox platform, users were allegedly required to create an account, and agree to Mt. Gox's Terms of Use. These included that Mt. Gox would "hold all monetary sums and all Bitcoins deposited by each Member in its Account, in that Member's name as registered in their Account details, and on such Member's behalf." *Id.* ¶ 10. It is alleged that account holders would either deposit bitcoins directly with Mt. Gox or wire fiat currency to a banking partner of Mt. Gox. *Id.* ¶ 12.

Mt. Gox initiated a banking relationship with Mizuho in September 2012, by opening and maintaining certain operating accounts at Mizuho's Shibuya Branch in Japan. *Id.* ¶ 18; *see also* Imaizumi Decl., Dkt. 18 ¶ 5. The Complaint alleges that Mizuho facilitated user wire transfers of funds -- both deposits and withdrawals -- on behalf of Mt. Gox. Compl. ¶¶ 18-19. Thus, it is alleged that Mizuho accepted wire transfers from Mt. Gox users, which Mizuho then transferred to Mt. Gox with instructions to credit the funds to the depositing user's Mt. Gox account. *Id.* ¶ 19. Similarly, Mizuho allegedly processed withdrawal requests by compiling such requests from Mt. Gox, and transferring the requested funds from Mt. Gox's Mizuho accounts to the users. *Id.* ¶ 20.

The Complaint alleges that Mizuho was the exclusive processor of deposits and withdrawals for Mt. Gox customers located in the United States. *Id.* ¶ 21. Mizuho submitted evidence that it did not communicate with users directly in its capacity as Mt. Gox's banking partner, and that users made all withdrawal requests to Mt. Gox directly. *See* Imaizumi Decl. ¶¶ 6-7.

      D.     The Termination of the Mizuho Banking Relationship and the Collapse of Mt. Gox

In 2013, news reports stated that authorities in the United States were investigating Mt. Gox for its business dealings related to possible money laundering. *See* Compl. ¶ 22; *see also* Ex. 2 to Fortinsky Decl., Dkt. 19-2 at 2 ("[Mt.] Gox's issues stem from its geographical location and the fact that it must cooperate with a banking system that's suspicious of bitcoin."); Ex. 7 to Fortinsky Decl., Dkt. 19-7 at 2 ("It appears the feds have decided there's a reason to believe Mt. Gox and a subsidiary are operating as unlicensed money transmitting businesses in violation of US law.").

Due to concerns raised by these reports, as well as the growing volume of transactions on the Mt. Gox platform, it is alleged that Mizuho sought to terminate its business and banking relationship with Mt. Gox. *See* Compl. ¶¶ 22-23. Initially, Mizuho is alleged to have asked Karpeles to close Mt. Gox's account at Mizuho. *Id.* ¶ 23. Karpeles allegedly refused. *Id.*[6] Mizuho allegedly responded by implementing certain policies, which the Complaint alleges were not disclosed to the public, and were designed to interfere with Mt. Gox's ability to transact with its customers. *See* Compl. ¶¶ 24-25. These policies included Mizuho's decision, in June 2013, to stop accepting and processing international

---

[6] In the Motion, Mizuho notes that Japanese banking laws would not have permitted it unilaterally to close Mt. Gox's account and that it did not have such permission at the time alleged. *See* Dkt. 17 at 8 n.4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-02483 JAK (Ex) | Date | November 13, 2018 |
|---|---|---|---|
| Title | Jonathan Carmel v. Mizuho Bank, Ltd., et al. | | |

withdrawals on behalf of Mt. Gox. *Id.* ¶ 25. Mizuho submitted a declaration suggesting that its June 20, 2013 suspension of outgoing wire transfers from Mt. Gox's accounts extended not only to international withdrawals, but applied to transfers within Japan as well. *See* Declaration of Ryuta Shiratori ("Shiratori Decl."), Dkt. 38-1 ¶ 2.

On June 20, 2013, which is when Mizuho allegedly suspended accepting outgoing wire transfer requests from Mt. Gox, a press release from Mt. Gox stated that it was temporarily suspending cash withdrawals of U.S. dollars due to "rising volumes of deposits and withdrawals from established and upcoming markets interested in Bitcoin." *See* Ex. 5 to Fortinsky Decl., Dkt. 19-5 at 2. This statement coincided with public reports of the difficulties customers were having in withdrawing funds from Mt. Gox. *See* Exs. 1-4 to Fortinsky Decl., Dkts. 19-1, 19-2, 19-3, 19-4; Compl. ¶ 26. On July 4, 2013, Mt. Gox issued another press release. It stated that international withdrawals had "fully resumed," and that over $1,000,000 in withdrawals had been processed in the preceding two weeks. *See* Ex. 6 to Fortinsky Decl., Dkt. 19-6. It is alleged that Mizuho continued to accept deposits into the Mt. Gox exchange after its June 20, 2013 decision to halt all withdrawals, in order to continue collecting fees associated with those deposits. *See* Compl. ¶ 27.

It is alleged that Mt. Gox users continued to experience problems with cash withdrawals from the platform, which ultimately caused Mt. Gox to terminate its operations. *Id.* ¶¶ 30-37. It is alleged that these problems were caused, at least in part, by Mizuho's refusal to process international withdrawal requests. *Id.* ¶ 31. On February 7, 2014, Karpeles allegedly suspended all withdrawals of bitcoin from Mt. Gox in order to investigate a "technical malfunction" in the bitcoin network. *Id.* ¶ 34. On February 10, 2014, Karpeles allegedly claimed that he had detected "unusual activity" on the exchange, which involved the ability of third parties to interfere with certain transactions. *Id.* It is alleged that these statements were false. *Id.* On February 24, 2014, the Mt. Gox website became inaccessible to its customers. *Id.* ¶ 36. On February 28, 2014, Mt. Gox filed for bankruptcy in Japan. *Id.* ¶ 37. It is alleged that in September 2015, Karpeles was arrested in Japan and charged with fraud and embezzlement in connection with his operation of Mt. Gox. *Id.* ¶ 42.

     E.     Plaintiff's Transactions with Mt. Gox

Plaintiff alleges that he joined and established an account with Mt. Gox on March 27, 2013, and transferred bitcoin into his account shortly thereafter. *See id.* ¶ 43. He alleges that he paid fees to Mt. Gox for each transaction he made on the platform. *Id.* ¶ 44. On November 20, 2013, it is alleged that Plaintiff submitted a withdrawal request in the amount of $52,493.22 in U.S. dollars from his Mt. Gox account to be transferred to his U.S. bank account. *Id.* ¶ 46. He alleges that he received an email confirmation of this withdrawal request from Mt. Gox, but that the funds were never deposited into his U.S. bank account. *Id.* ¶¶ 46-47.

**III.**    **Analysis**

     A.     Motion to Dismiss for Lack of Personal Jurisdiction

          1.     Legal Standards

A party may move to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-02483 JAK (Ex) | Date | November 13, 2018 |
|---|---|---|---|
| Title | Jonathan Carmel v. Mizuho Bank, Ltd., et al. | | |

party asserting the existence of jurisdiction bears the burden of establishing it. *See Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003). If the court does not require an evidentiary hearing, a plaintiff need make only a prima facie showing of personal jurisdiction. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Uncontroverted allegations in the complaint must be taken as true, and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *Boschetto*, 539 F.3d at 1015. However, a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

To establish personal jurisdiction over a defendant, a plaintiff must show that both the long-arm statute of the forum state confers personal jurisdiction over an out-of-state defendant, and that the exercise of jurisdiction is consistent with federal due process requirements. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154-55 (9th Cir. 2006). California's long-arm statute is co-extensive with the scope of what is permitted by due process. *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (citing Cal. Code Civ. Proc. § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.").

Constitutional due process requires that jurisdiction be exercised over a nonresident party only if that party has "minimum contacts" with the forum state, such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985).

    2.    <u>Application</u>

        a)    General Jurisdiction

Depending on the nature and extent of a defendant's contacts, if any, with a forum state, there may be general or specific personal jurisdiction. If there is a basis for general jurisdiction, a party is subject to being required to appear and respond to any claims brought by a party in that forum. *See, e.g.*, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Thus, if general jurisdiction is established, a party may be "haled into court in the forum state to answer for any of its activities anywhere in the world," and its contacts with the forum state need not relate to the claim asserted. *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014); *see also Burnham v. Superior Court of Cal.*, 495 U.S. 604, 617-19 (1990).

General jurisdiction exists only when a party's contacts with the forum state are "substantial or continuous and systematic" so as to "approximate physical presence" in the state. *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (internal quotation marks omitted). With respect to corporate defendants, contacts with the forum state must render a corporation "essentially at home in the forum state." *Goodyear*, 564 U.S. at 919. Corporations are "at home" where they are incorporated, or where they have their principal places of business. *Id.* at 924; *Daimler AG v. Bauman*, 571 U.S. 117, 137-39 (2014).

As noted, Mizuho is a Japanese corporation, whose principal place of business is in Tokyo. *See*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-02483 JAK (Ex) | Date | November 13, 2018 |
|---|---|---|---|
| Title | Jonathan Carmel v. Mizuho Bank, Ltd., et al. | | |

Imaizumi Decl., Dkt. 18 ¶¶ 2-3. The Complaint acknowledges these facts. *See* Compl. ¶ 5. That Mizuho maintains a corporate presence in California, *see* Imaizumi Decl. ¶ 4, is insufficient to make it "at home" in this forum. *See Daimler*, 571 U.S. at 137-39. This result is ratified because it is a foreign entity. *See id.* at 140-41 ("Considerations of international rapport thus reinforce our determination that subjecting [a foreign corporation] to the general jurisdiction of courts in California would not accord with the 'fair play and substantial justice' due process demands.") (quoting *International Shoe*, 326 U.S. at 316).

For the foregoing reasons, Mizuho is not subject to general jurisdiction in California.

> b)    Specific Jurisdiction

Specific jurisdiction may be exercised over a party if the underlying claims arise out of that party's forum-related contacts. *See Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993). The Ninth Circuit applies a three-part test to assess whether specific jurisdiction exists:

> (1) the non-resident defendant must . . . purposefully avail[] himself of the privilege of conducting activities in the forum [and] invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and
> (3) the exercise of jurisdiction [over the defendant] must . . . be reasonable.

*See Schwarzenegger*, 374 F.3d at 802. "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach*, 453 F.3d at 1155 (quoting *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995)). A plaintiff bears the burden of satisfying the first two prongs of the test. *Id.* The burden then shifts to the party contesting jurisdiction to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Schwarzenegger*, 371 F.3d at 802.

The first element of the specific jurisdiction test may be satisfied with facts sufficient to show either "purposeful availment or purposeful direction, which, though often clustered together under a shared umbrella, are in fact two distinct concepts." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Pebble Beach*, 453 F.3d at 1155). "Evidence of availment is typically action taking place in the forum that invokes the benefits and protections of the laws in the forum. Evidence of direction generally consists of action taking place outside the forum that is directed at that forum." *Pebble Beach*, 453 F.3d at 1155 (internal citations omitted).

All of Mizuho's alleged conduct occurred in Japan. Thus, all of the following matters are undisputed: (i) Mt. Gox's account with Mizuho was opened at its Shibuya branch in Tokyo; (ii) all employees responsible for operational decisions relating to Mt. Gox, including the decisions to seek to suspend services or stop accepting international wire transfers, were located in Japan; (iii) Mizuho did not communicate with Mt. Gox customers about its banking relationship with Mt. Gox; and (iv) all relevant witnesses and documents in Mizuho's control are located in Japan. *See* Imaizumi Decl. ¶¶ 5-9. Accordingly, Plaintiff's jurisdictional argument relies on purposeful direction, not purposeful availment. *See* Dkt. 32 at 13-18; *see also Picot v. Weston*, 780 F.3d 1206, 1213-14 (9th Cir. 2015) (recognizing that tortious interference claims are appropriately analyzed under the purposeful direction framework).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-02483 JAK (Ex) | Date | November 13, 2018 |
| Title | Jonathan Carmel v. Mizuho Bank, Ltd., et al. | | |

To assess whether a defendant purposefully directed its activities at the forum state, the three-part test set forth in *Calder v. Jones*, 465 U.S. 783 (1984). The *Calder* effects test requires that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Picot*, 780 F.3d at 1214 (quoting *Schwarzenegger*, 374 F.3d at 803). Application of the *Calder* effects test focuses on the defendant's "contacts with the forum state itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

With respect to the first prong of the *Calder* effects test, an intentional act is one committed with the "intent to perform an actual, physical act in the real world." *Picot*, 780 F.3d at 1214. Consideration of the act is limited to whether an "external manifestation of the actor's will" is reflected, and "does not include any of [the act's] results, even the most direct, immediate, and intended." *Schwarzenegger*, 374 F.3d at 806. It is undisputed that Mizuho allegedly intended to affect its banking relationship with Mt. Gox by suspending the processing of all international withdrawal requests in June 2013. This is sufficient to establish the intentional act requirement of the *Calder* effects test.

The focus of the parties' jurisdiction dispute centers on the second prong of the test: whether Mizuho's alleged misconduct that forms the basis for the claims advanced here was expressly aimed at California. Plaintiff argues that Mizuho directed its allegedly tortious conduct toward Plaintiff, because he lived in California. Plaintiff contends that Mizuho did so as part of the implementation of its broader, strategic plan. Thus, Mizuho sought to interfere with Mt. Gox's customers in the United States in order to convince Mt. Gox to agree to terminate its banking relationship with Mizuho. *See* Dkt. 32 at 14-15. The assumption is that in order to maintain such customers, Mt. Gox would end the relationship and find some alternative banking partner who would process the withdrawal requests made by Mt. Gox users.

Mizuho argues Plaintiff's residence in California alone is insufficient to demonstrate that its alleged conduct, all of which occurred in Japan, was expressly aimed at California. *See* Dkt. 17 at 13. It also argues that Plaintiff has not alleged that Mizuho's decision to suspend international withdrawals "targeted" him in California, since his withdrawal request was not made under November 2013 -- several months after Mizuho's withdrawal suspension policy was implemented. *Id.*

It is well-settled that the "express aiming" prong of the *Calder* requires "something more" than a "foreign act with foreseeable effects in the forum state." *Washington Shoe v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012). Whether "something more" has been shown "depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue." *Schwarzenegger*, 374 F.3d at 807.

The Ninth Circuit previously held that an intentional tort, coupled with the defendant's knowledge of a plaintiff's presence in the forum state, constituted sufficient "individualized targeting" to qualify as "something more." *See Washington Shoe*, 704 F.3d at 678-79; *see also Brayton Purcell*, 606 F.3d at 1130-31 (alleged copyright infringement that was "intentional, wrongful, and aimed at [plaintiff]" sufficient to show express aiming). *Walden v. Fiore* led to a modification of the "individualized targeting" approach. *Walden* involved a DEA agent who questioned, searched, and seized cash belonging to, a Nevada resident who had been stopped by the DEA while he was changing planes at an airport in Atlanta, Georgia. *See* 571 U.S. 277, 279-80. Fiore filed a civil rights action against the DEA agent in the District of Nevada, alleging Fourth Amendment violations. *Id.* at 281. The Supreme Court held that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-02483 JAK (Ex) | Date | November 13, 2018 |
|---|---|---|---|
| Title | Jonathan Carmel v. Mizuho Bank, Ltd., et al. | | |

there was no personal jurisdiction over the agent in Nevada:

> [T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him. To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.

*Id.* at 286 (citations omitted).

The Ninth Circuit has explained that *Walden* "reinforced the traditional understanding that our personal jurisdiction analysis must focus on the defendant's contacts with the forum state, not the defendant's contacts with the resident of the forum." *Picot*, 780 F.3d at 1214. Accordingly, "while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction, absent compliance with what *Walden* requires." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017).

Under the foregoing standards, Mizuho's suit-related contacts with California are insufficient to show that its conduct was expressly aimed here. The only conduct tying Mizuho to California are its alleged efforts to convince Mt. Gox to agree to terminate their banking relationship, and its related decision to stop processing withdrawal requests on Mt. Gox's behalf. *See* Compl. ¶¶ 22-28. That these decisions affected individuals in California, including Plaintiff, by causing them to be unable to access certain funds, is insufficient to satisfy the express aiming prong after *Walden*. *See Walden*, 571 U.S. at 290 ("Respondents [] lacked access to their funds in Nevada not because anything independently occurred there, but because Nevada is where respondents chose to be at a time when they desired to use the funds seized by petitioner."); *Picot*, 780 F.3d at 1215 ("[A]s in *Walden*, Picot's injury, an inability to access out-of-state funds, is not tethered to California in any meaningful way. Rather, his injury is entirely personal to him and would follow him wherever he might choose to live or travel. The effects of Weston's actions are therefore not connected to the forum State in a way that makes those effects proper basis for jurisdiction.") (internal quotation marks and citations omitted).[7]

---

[7] At the hearing, Plaintiff argued that *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008), offered a strong analogy to support its position that Mizuho expressly aimed its conduct at Plaintiff. In *Dudnikov*, defendant copyright holders contacted eBay, in California, in connection with an eBay auction hosted by plaintiffs who were located in Colorado. The infringement claims were premised on the allegation that the fabric prints displayed on the auction page infringed defendants' copyrights. *See id.* at 1067. After eBay terminated the auction, plaintiffs commenced a proceeding in Colorado seeking a declaratory judgment that their prints did not infringe defendants' copyrights. *Id.* at 1067-1068. *Dudnikov* held that, although defendants' letter to eBay "formally traveled only to California, it can be fairly characterized as an intended means to further the intended end of cancelling plaintiffs' auction in Colorado. . . . defendants intended to send the [letter] to eBay in California, but they did so with the ultimate purpose of cancelling plaintiffs' auction in Colorado. Their 'express aim' thus can be said to have reached into Colorado . . . ." *Id.* at 1075.

*Dudnikov* is distinguishable. Plaintiff concedes that Mizuho's "ultimate purpose" in changing its withdrawal policies was to coerce Mt. Gox to terminate their banking relationship. Mizuho's conduct may have had the effect of preventing Plaintiff from withdrawing his funds from Mt. Gox, but it has not been alleged that this was the primary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-02483 JAK (Ex) | Date | November 13, 2018 |
|----------|------------------------|------|-------------------|
| Title | Jonathan Carmel v. Mizuho Bank, Ltd., et al. | | |

Both parties rely on recent district court decisions involving other Mt. Gox customers advancing similar claims against Mizuho for tortious interference based on its decision to stop processing withdrawals. *Greene v. Mizuho Bank, Ltd.*, was a putative class action in the Northern District of Illinois by two individuals: Greene, a resident of Illinois, and Lack, a resident of California. *See* 169 F. Supp. 3d 855, 857 (N.D. Ill. 2016). The allegations in *Greene* are similar to those advanced here, with some important distinctions. Greene joined Mt. Gox in 2012, traded and sold bitcoins on the exchange for more than a year, and then began experiencing problems withdrawing funds from his account in November 2013. *See id.* at 858. Lack joined Mt. Gox in January 2014, after Mizuho stopped processing withdrawals for Mt. Gox. To fund his account, Lack initially wired fiat currency to Mizuho, which accepted Lack's deposit, without disclosing its suspension of all withdrawals from Mt. Gox's account. *Id.* at 859.

*Greene* determined based on decisions by the Seventh Circuit that Mizuho would be subject to specific jurisdiction in California with respect to the claims advanced by Lack. *See id.* at 861-63. This determination was premised primarily on the following: (i) Lack's transfer of funds to Mizuho for deposit into Mt. Gox's account, for which Mizuho earned a transaction fee; (ii) the documents associated with that transferred contained Lack's address in California; and (iii) Mizuho accepted Lack's transfer without disclosing its suspension of withdrawals from the Mt. Gox account. *See id.* ("Mizuho's contacts with California were 'intertwined with [its] transactions or interactions with' Lack . . . as Mizuho 'purposefully exploited the [California] market' by accepting deposits with the attendant fees while concealing its no-withdrawal policy.") (first quoting *Walden*, 571 U.S;. at 286, then quoting *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014)).

A different conclusion was reached with respect to Greene. "Unlike Lack, Greene does not allege that he sent any wire transfers to Mizuho or that Mizuho received any transaction fees from Greene. Greene concedes this, but retorts that had he known that Mizuho had placed restrictions on Mt. Gox's Mizuho account, he would have withdrawn his bitcoins from Mt. Gox before its demise rendered them inaccessible." *See id.* at 865. Accordingly, it was determined that "the alleged harm to Greene is Mizuho's only contact with Illinois, and that harm is insufficient to establish personal jurisdiction, as 'mere injury to a forum resident is not a sufficient connection to the forum.'" *Id.* (quoting *Walden*, 571 U.S. at 290).[8]

*Pearce v. Mizuho Bank, Ltd.*, No. 18-cv-306, 2018 WL 4094812 (E.D. Pa. Aug. 27, 2018) also addressed similar issues. There, Pearce allegedly transferred previously purchased bitcoins into a newly created Mt. Gox account in November 2013. *Id.* at *2. He then converted some of those bitcoins into fiat currency, which he attempted to withdraw. *Id. Pearce* first assessed the divergent findings as to the two plaintiffs in *Greene*:

Both men were Mt. Gox users and brought suit against Mizuho following its collapse. As

---

purpose or objective of Mizuho's conduct. The cancellation of the auction in *Dudnikov* had such an effect. Moreover, because *Dudnikov* predates *Walden,* it is not persuasive authority as to the individualized targeting analysis under *Walden*.

[8] Having concluded "under Seventh Circuit precedent" that personal jurisdiction existed over Mizuho in California with respect to Lack, but not Illinois with respect to Greene, the court transferred the case to this district pursuant to 28 U.S.C. § 1631 based on the representation that Lack resided here. *See id.* at 866.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-02483 JAK (Ex) | Date | November 13, 2018 |
|---|---|---|---|
| Title | Jonathan Carmel v. Mizuho Bank, Ltd., et al. | | |

in this case, Mizuho moved to dismiss for lack of personal jurisdiction. The Northern District of Illinois found that Lack had sent Mizuho a wire transfer from his California bank after Mizuho had ceased fulfilling withdrawal requests and that, by accepting the deposit and profiting from the associated fees, Mizuho was aware that Lack was a California resident and was purposefully exploit[ing] the [California] market. However, the court found that Greene had merely traded bitcoin on Mt. Gox and had never sent any wire transfers or paid any transaction fees to Mizuho. Thus, Greene's argument that Mizuho tortuously interfered with his consumer agreement with Mt. Gox by trying to undermine Mt. Gox's ability to business, did not establish the necessary transactional contacts with Mizuho.

*Id.* at *5 (internal quotation marks and citations omitted).

*Pearce* then determined that the alleged facts there were "more aligned to Greene's because Mizuho never engaged in any transactional contact with Pearce. Therefore, under the facts alleged by Pearce, we do not find that Mizuho created any 'relationship among [itself], the forum, and the litigation.'" *Id.* (quoting *Walden*, 571 U.S. at 284-85).

Finally, *Babiak v. Mizuho Bank, Ltd.*, No. 18-cv-352, 2018 U.S. Dist. LEXIS 159696 (E.D. Va. Sept. 17, 2018), concluded that there was no personal jurisdiction over Mizuho with respect to tortious interference claims filed by a former Mt. Gox user. *Babiak* compared its facts to those alleged in *Greene* and *Pearce*, and concluded that the plaintiff failed to allege sufficient transactional contacts with Mizuho to provide a nexus between Mizuho's conduct and Virginia:

Unlike Lack, Plaintiff did not wire money to Defendant, thereby alerting Defendant to his existence and citizenship. Instead, Plaintiff, like Pearce and Greene, deposited previously purchased bitcoins directly into his Mt. Gox account. When Plaintiff wished to withdraw funds, Mt. Gox requested the withdrawal from Defendant on Plaintiff's behalf. Like Pearce, Plaintiff never had any contacts or transactions directly with Defendant. Although Plaintiff here attempted three withdrawal requests while Pearce only attempted one, the issue in *Pearce*'s jurisdiction analysis was not the frequency of withdrawal requests. Instead, the issue was that the action at the heart of the personal jurisdiction inquiry was inaction. This does not change with the number of times Defendant declined to act.

Therefore here, as has been found in other districts, there is no personal jurisdiction. Defendant did not purposefully avail itself of the privilege of conducting activities in Virginia. In fact, Defendant conducted no activities in Virginia at all. "[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Walden*, 571 U.S. at 291.

*Babiak*, 2018 U.S. Dist. LEXIS 159696, at *11-13.

*Greene*, *Pearce*, and *Babiak* confirm that, absent any formal transactional contacts between a Mt. Gox user and Mizuho that would reasonably connect Mizuho to a particular forum, the exercise of personal jurisdiction over Mizuho in that forum would conflict with the due process requirements of *Walden*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-02483 JAK (Ex) | Date | November 13, 2018 |
|---|---|---|---|
| Title | Jonathan Carmel v. Mizuho Bank, Ltd., et al. | | |

Assuming, without deciding, that *Greene*'s analysis of Seventh Circuit precedent with respect to jurisdiction over Lack in California would be decided the same way under Ninth Circuit precedent, the allegations here are more aligned with those in *Pearce and Babiak*. Thus, Plaintiff has not alleged any transactional contacts with Mizuho that would alert it to his presence in California. Moreover, he alleges that he initially funded his Mt. Gox account with previously obtained bitcoins -- like the plaintiffs in *Pearce* and *Babiak*. Unlike Lack, he did not a wire transfer of fiat currency that had to be accepted and processed by Mizuho, and for which Mizuho would have earned a transaction fee. *See* Compl. ¶ 43.

Plaintiff has alleged that, as a result of Mizuho's out-of-state conduct, he could not obtain funds to which he was allegedly entitled. This is insufficient to demonstrate that Mizuho expressly aimed its conduct at him in California. *See Walden*, 571 U.S. at 290-91; *Picot*, 780 F.3d at 1215. Therefore, the Motion is **GRANTED**.[9]

**IV.**    **Conclusion**

For the reasons stated in this Order, the Motion is **GRANTED**.

Plaintiff shall continue his efforts to serve Karpeles and file a proof of service. If Defendant has not been served, Plaintiff shall file a status report by January 7, 2019, regarding the efforts taken to serve Karpeles and when it is expected that he will be served.

**IT IS SO ORDERED.**

                                                          _____ : _____

                                    Initials of Preparer    ak
                                                          _____

---

[9] Because of the determination that there is no personal jurisdiction over Mizuho, its arguments as to the merits of the tortious interference claim and the timeliness of the class allegations are not addressed.