# EXHIBIT A

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-00617-RGK-GJS | | Date | June 24, 2019 |
|---|---|---|---|---|
| Title | *Lack v. Mizuho Bank* | | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) Order Re: Karpeles' Motion to Dismiss [119]

## I. INTRODUCTION

On January 24, 2018, plaintiff Joseph Lack ("Lack") filed a putative class action complaint on behalf of himself and others similarly situated against defendants Mark Karpeles ("Karpeles") and Mizuho Bank, Ltd. ("Mizuho"). In the Complaint, Lack alleges four claims arising out of the 2014 collapse of the Mt. Gox Bitcoin exchange: negligence and fraud against Karpeles, and unjust enrichment and fraud against Mizuho (DE 1).

Karpeles was not served until April 16, 2019.[1] In response to an Order to Show Cause as to why the Court should not sever Karpeles from the action, the parties filed a stipulation to dismiss Mizuho. (*See* ECF No. 124.) Accordingly, only the two claims against Karpeles remain.

Now before the Court is Karpeles' Motion to Dismiss (DE 119). Karpeles asserts five grounds for dismissal: (1) expiration of the statute of limitations; (2) lack of subject-matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1); (3) lack of personal jurisdiction under Rule 12(b)(2); (4) failure to prosecute; and (5) failure to state a claim under Rule 12(b)(6). For the following reasons, the Court **DENIES** Karpeles' Motion.

## II. FACTUAL BACKGROUND

Lack alleges the following:

In 2009, Karpeles founded Mt. Gox, which claimed to be the "world's most established Bitcoin exchange." (Compl. ¶ 10, ECF No. 1.) Bitcoins are a digital cryptocurrency which users can purchase

---

[1] Lack encountered procedural hurdles while attempting to serve Karpeles in Japan. (*See* ECF No. 79.) The Court addressed Lack's requests to serve Karpeles by alternate means several times, and as such, whether Karpeles was timely served is not at issue.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-00617-RGK-GJS | Date | June 24, 2019 |
|---|---|---|---|
| Title | ***Lack v. Mizuho Bank*** | | |

and store in a virtual "vault," where they are kept until the users wish to withdraw them. A Bitcoin exchange, like Mt. Gox, is a forum where bitcoins can be bought and sold.

Prior to its collapse, Mt. Gox was a Bitcoin exchange based in Tokyo, Japan. Karpeles was its President and CEO. Mizuho is a financial institution also located in Tokyo that partnered with Mt. Gox to allow Mt. Gox users to deposit cash into their Mt. Gox accounts. To make purchases or trades, Mt. Gox users could (1) transfer bitcoins directly into their Mt. Gox accounts; or (2) deposit cash into their Mt. Gox accounts by wiring government-issued currency to Mizuho, which would then transfer the cash into an account it held on Mt. Gox's behalf. Mt. Gox received a transaction fee for each trade made on the exchange, and Mizuho received a transaction fee for each wire deposit it processed through the exchange.

To withdraw cash from the Mt. Gox exchange, a user would submit a request through his Mt. Gox account. Then, Mt. Gox would compile all withdrawal requests, which included information like the user's banking details and personal address, and send them to Mizuho to process. Finally, Mizuho would process the requests and deposit the cash into the user's bank account via wire transfer.

Karpeles controlled all aspects of Mt. Gox's business, including its public statements, online customer service, accounting, and banking affairs. Although he was aware of security "bugs" in the Mt. Gox system as early as 2011, Karpeles knowingly concealed these defects from the public and falsely assured users that their bitcoins were safe in their Mt. Gox accounts.

In or around 2013, Mizuho became concerned by Mt. Gox's growing transaction volumes as well as reports that U.S. authorities were investigating Mt. Gox for money laundering. As such, Mizuho wanted to distance itself from Mt. Gox and sought to end its business relationship with the exchange. But to prevent reputational harm, avoid regulatory scrutiny, and continue accepting transaction fees, Mizuho wanted Mt. Gox to terminate the relationship. When Karpeles refused to close Mt. Gox's account at Mizuho, Mizuho instituted a series of policies it kept secret from the public that were designed to frustrate Mizuho's relationship with Mt. Gox. Most pertinent to the present case, Mizuho sharply limited and then ultimately stopped processing international wire withdrawals from Mt. Gox's Mizuho account. Mizuho continued, however, to accept international cash deposits into the Mt. Gox account. Mizuho prohibited both Mt. Gox and its own employees from disclosing this new policy to Mt. Gox users or to the public at large.

After Mizuho instituted this new policy, Mt. Gox users began to report significant delays and difficulty in withdrawing cash from their Mt. Gox accounts. In February 2014, amidst these concerns, Karpeles represented that the delays were only temporary and that Mt. Gox user assets remained safe. Karpeles also assured users through the Mt. Gox online support desk that problems were being addressed. Karpeles knew that these representations were false.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-00617-RGK-GJS | Date | June 24, 2019 |
|---|---|---|---|
| Title | ***Lack v. Mizuho Bank*** | | |

Around this time, in January 2014, Lack, a resident of California, joined Mt. Gox. Upon joining, Lack wired $40,000 in U.S. dollars from his local Wells Fargo branch in California to Mt. Gox's Mizuho account. The wire transfer instructions listed Lack's Mt. Gox account number to identify the funds as belonging to Lack. Mizuho accepted the transfer and collected the transaction fee.

Shortly thereafter, Karpeles halted Mt. Gox users' ability to withdraw their bitcoins from the exchange, and on February 24, 2014, the Mt. Gox website "went dark." Lack waited for his $40,000 deposit to appear in his Mt. Gox account, but it never appeared. He then visited Wells Fargo and attempted to recall the wire transfer, to no avail. Despite further attempts to withdraw or access the $40,000 he deposited in his Mt. Gox account, Lack did not get his money back.

Mt. Gox filed for bankruptcy protection in Japan on February 28, 2014. Karpeles admitted in the bankruptcy petition that he knew about security bugs since May 2011, but that he was not aware until January 2014 that the bugs could lead to unconfirmed transactions and illicit withdrawals. In September 2015, Karpeles was arrested by Tokyo police and charged with fraud and embezzlement.

Lack now brings this putative class action against Karpeles and Mizuho. Mizuho has been dismissed; Karpeles now moves to dismiss Lack's remaining claims.

## III. JUDICIAL STANDARD

### A. Motion to Dismiss for Lack of Subject-Matter Jurisdiction

Pursuant to 28 U.S.C. § 1332(d)(2), district courts have original jurisdiction over any civil action in which (1) any member of the class of plaintiffs is a citizen of a state different from any defendant, and (2) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). For individuals, citizenship is determined by domicile, *Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957), while a corporations' citizenship is determined by its place of incorporation and principal place of business, 28 U.S.C. § 1332(c).

### B. Motion to Dismiss for Lack of Personal Jurisdiction

Under Rule 12(b)(2), a party may seek dismissal of action for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). Once a party seeks dismissal under Rule 12(b)(2), the plaintiff has the burden of demonstrating that personal jurisdiction exists. *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007). Where the motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). Accordingly, the court only "inquire[s] into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995). Although the plaintiff cannot "simply rest on the bare allegation of its

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-00617-RGK-GJS | Date | June 24, 2019 |
|---|---|---|---|
| Title | *Lack v. Mizuho Bank* | | |

complaint," uncontroverted allegations in the complaint must be taken as true. *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977); *see AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

### C. Motion to Dismiss for Failure to State a Claim

A party may also move to dismiss for failure to state a claim under Rule 12(b)(6). To survive a motion under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff alleges enough facts to permit a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* A plaintiff need not provide "detailed factual allegations" but must provide more than mere legal conclusions. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When ruling on a Rule 12(b)(6) motion, the court must "accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court must also "construe the pleadings in the light most favorable to the nonmoving party." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012). The court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

## IV. DISCUSSION

Karpeles moves to dismiss Lack's Complaint on several grounds. First, Karpeles argues that the Court lacks subject matter and personal jurisdiction. Second, Karpeles contends that the statute of limitations bars Lack's negligence and fraud claims and that the Complaint fails to state a claim. Finally, Karpeles argues that the Complaint should be dismissed for failure to prosecute.

### A. Subject-Matter Jurisdiction

As an initial matter, Karpeles contends that the Court lacks subject-matter jurisdiction because the amount in controversy is too low. Karpeles correctly notes that Lack claims only $40,000 in individual damages. Moreover, the Court denied class certification as to the claims against Mizuho. (*See* ECF No. 109.)

But class certification was not requested or denied as to the claims against Karpeles, and Lack adequately alleged the requirements of 28 U.S.C. § 1332(d) in his Complaint. More importantly, "a district court's subsequent denial of Rule 23 class certification does not divest the court of jurisdiction" under 28 U.S.C. § 1332(d). *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Service Workers Intern. Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1092 (9th Cir. 2010).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-00617-RGK-GJS | Date | June 24, 2019 |
|---|---|---|---|
| Title | *Lack v. Mizuho Bank* | | |

Accordingly, the Court retains subject-matter jurisdiction over the Complaint.

**B.    Personal Jurisdiction**

Karpeles next argues that the Court lacks personal jurisdiction over him for the following reasons: (1) Karpeles is a citizen of France who resides in Japan; (2) Karpeles has never visited or conducted business in California; and (3) Karpeles is an officer and director of a Japanese corporation.

The Court addressed similar arguments in Mizuho's motion to dismiss. (*See* ECF No. 51.) Specifically, Mizuho argued that the Court lacked personal jurisdiction over it because it is a Japanese bank located in Tokyo and the decisions and policies at issue were made and promulgated in Japan. As a result, Mizuho argued, it lacked sufficient contacts with California. But the Court disagreed. For similar reasons, the Court also finds that Karpeles is subject to personal jurisdiction in California.

California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). The U.S. Constitution allows courts to exercise personal jurisdiction over nonresident defendants when it comports with due process. *Id.* For a court to subject a nonresident defendant to jurisdiction in the forum state, due process requires that the defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations and citations omitted). A district court "may exercise either general or specific personal jurisdiction over nonresident defendants." *Fed. Deposit Ins. Corp. v. British-Am. Ins. Co.*, 828 F.2d 1439, 1442 (9th Cir. 1987). Whether general or specific jurisdiction is appropriate turns on the type and extent of contacts that the defendant has with the forum state.

Here, Lack does not argue that Karpeles is subject to general jurisdiction in California. Accordingly, the Court examines specific jurisdiction.

A court has specific personal jurisdiction over a non-resident defendant when (1) the defendant purposefully directs its activities or consummates some transaction with the forum or a forum's resident (i.e. "purposeful direction") or performs some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws (i.e. "purposeful availment"), (2) the plaintiff's claim arises out of or relates to the defendant's forum-related activities (i.e. "relatedness"), and (3) the forum's exercise of personal jurisdiction comports with fair play and substantial justice (i.e. "reasonableness"). *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801–02 (9th Cir. 2004). The plaintiff bears the burden of meeting the first two prongs of the test. *Id.* at 801. If the plaintiff meets the first two prongs, the burden shifts to the defendant to "present a compelling case" that the exercise of personal jurisdiction would not be reasonable. *Id.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-00617-RGK-GJS | | Date | June 24, 2019 |
|---|---|---|---|---|
| Title | ***Lack v. Mizuho Bank*** | | | |

        a.     *Fiduciary Shield Doctrine*

As an initial matter, Karpeles argues that he is shielded from jurisdiction by the fiduciary shield doctrine. "Under the fiduciary shield doctrine a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989). This doctrine does not apply "(1) where the corporation is the agent or alter ego of the individual defendant . . .; or (2) by virtue of the individual's control of, and direct participation in the alleged activities." *Wolf Designs, Inc. v. DHR Co.*, 322 F.Supp.2d 1065, 1072 (C.D. Cal. 2004) (citing *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984) and *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985)). "Each defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984).

The Ninth Circuit has found personal liability for corporate officers when the defendant is the "guiding spirit" behind the misconduct or the "central figure" in the corporate activity. *Davis*, 885 F.2d at 524. Here, Lack claims that Karpeles is liable for negligence and fraud committed through his role as CEO and President of Mt. Gox. In fact, Lack alleges that Karpeles was the sole driving force behind the negligent and fraudulent acts and asserts that Karpeles is individually liable for Lack and Mt. Gox users' harm. Further, Mt. Gox is not named as a defendant. As a result, the fiduciary shield doctrine does not apply.

The Court now turns to whether it has specific jurisdiction over Karpeles.

        2.     *Purposeful Direction*

The first prong of the specific jurisdiction test is either "purposeful availment" or "purposeful direction." In tort cases, the Ninth Circuit applies the "purposeful direction test." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). Under the purposeful direction test, the defendant must have committed an intentional act, expressly aimed at the forum state, causing harm that the defendant knows is likely to be suffered in the forum state. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). Purposeful direction usually concerns "the defendant's actions outside the forum state that are directed at the forum." *Schwarzenegger*, 374 F.3d at 803.

The creation and maintenance of a website constitutes an intentional act. *See Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128–29 (9th Cir. 2010), *abrogated on other grounds by Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). That said, "[i]t is beyond dispute in this circuit that maintenance of a passive website alone cannot satisfy the express aiming prong." *Brayton Purcell LLP*, 606 F.3d at 1129; *see also Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007) ("We consistently have held that a mere web presence is

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-00617-RGK-GJS | Date | June 24, 2019 |
|---|---|---|---|
| Title | ***Lack v. Mizuho Bank*** | | |

insufficient to establish personal jurisdiction."). Maintaining a passive website may sufficiently establish personal jurisdiction over a defendant if a defendant's online activity was expressly aimed at the forum state. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002). Therefore, the inquiry is whether the defendant's intentional act was expressly aimed at California, regardless of whether it involved online activity. *See Brayton Purcell LLP*, 606 F.3d at 1129.

Here, Karpeles' allegedly fraudulent acts largely took place through the Mt. Gox website, which Lack and other users accessed in California. When a defendant operates an internet website, "the nature of the website has jurisdictional significance" when "the website allows the defendant to maintain some ongoing contact with the forum state (as well as every other state that can access the site)." *Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008). For interactive websites, where "users can exchange information with the host computer," courts examine "the level of interactivity and commercial nature of the exchange of information that occurs on the Web site to determine if sufficient contacts exist to warrant the exercise of jurisdiction." *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997) (internal citations omitted).

Mt. Gox's website was highly interactive. Lack and other California users opened accounts, communicated with the customer support desk, initiated bitcoin trades, made deposits, and processed withdrawals through the website. And when Karpeles issued statements on behalf of Mt. Gox assuring users that the withdrawal delays were temporary, or that the security system was secure, those statements reached users accessing the website in California.

The defendant's act must also have caused harm that he knows is likely to be suffered in California. *See Brayton Purcell LLP*, 606 F.3d at 1128. This third element is satisfied when the act "has 'foreseeable effects' in the forum." *Id.* at 1131. Here, when Lack opened his account with Mt. Gox, he provided his California address. Likewise, other Californians created accounts the same way. Mt. Gox regularly transacted with users in California, both accepting and sending money from California-based accounts. As a result, the misrepresentations, omissions, and negligent security maintenance were likely to cause harm suffered by users in California; and Karpeles, as President and CEO of Mt. Gox, had access to the data indicating that Mt. Gox had customers in California. As the Court explained in its prior Order re: Mizuho's motion to dismiss, in intentionally allowing users to open accounts that Karpeles knew originated from California while simultaneously failing to disclose material information to those California depositors, Karpeles engaged in intentional acts that "create[d] the contacts with" California. (*See* Order re: Mizuho's Motion to Dismiss 5, ECF No. 51.)

        3.    <u>Relatedness</u>

The second prong is the "relatedness" of the defendant's forum-related conduct to the plaintiff's claims. In *Walden v. Fiore*, the Supreme Court explained that to comport with due process, the defendant's relationship with the forum state "must arise out of contacts that the defendant *himself*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-00617-RGK-GJS | Date | June 24, 2019 |
|---|---|---|---|
| Title | ***Lack v. Mizuho Bank*** | | |

creates with the forum state." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal citations omitted) (emphasis in original). The contacts cannot be based on the "unilateral activity" of the plaintiff. *Id.* at 1123. Further, the defendant's contacts must be with the forum state itself, not simply with persons who reside there. *Axiom Foods*, 874 F.3d at 1070 (citing *Walden*, 571 U.S. at 284). The plaintiff "cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 284.

Karpeles initiated communications with all of Mt. Gox's users—including Lack and other California users—that encouraged users to create and maintain accounts, while withholding critical information about the exchange. Furthermore, Lack alleges that he relied on Karpeles' virtual assurances when deciding whether to invest in Mt. Gox. The Ninth Circuit has explained that it is a "well-established rule" that "when a defendant engages in tortious activity toward a plaintiff in the state where the plaintiff resides, the defendant is subject to personal jurisdiction there." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1148 (9th Cir. 2017). In making this statement, the court cited *Brainerd*, a Ninth Circuit case in which personal jurisdiction was established when the out-of-state defendant sent allegedly tortious communications to in-state recipients via telephone and mail. *Id.* (citing *Brainerd v. Governors of the University of Alberta*, 873 F.2d 1257, 1258–60 (9th Cir. 1989)).

The Court therefore finds that Lack's claims are related to Karpeles' forum-directed activities.

4. *Reasonableness*

Finally, the Court concludes that it is reasonable to exercise personal jurisdiction over Karpeles because Karpeles' "suit-related conduct created a substantial connection" with California. *See Walden*, 571 U.S. at 284. As the district court found in the pending case against Karpeles in Illinois arising out of the same conduct, allowing Karpeles to escape jurisdiction in California while he sold to the United States as a whole "would lead to the absurd result that a foreign defendant who committed state law torts while conducting business indiscriminately across all fifty States could be subject to jurisdiction in none." *Greene v. Karpeles*, No. 14-cv-1437, 2019 WL 1125796, at *6 (N.D. Ill. Mar. 12, 2019).

5. *Conclusion*

In sum, Karpeles engaged in intentional acts or omissions "expressly aimed" at California, causing harm to Lack and others that Karpeles knew was likely to occur in California. *See Axiom Foods*, 874 F.3d at 1069. Karpeles therefore has sufficient minimum contacts with California to establish personal jurisdiction.

**C.** **Failure to State a Claim**

Even if the Court has personal jurisdiction, Karpeles argues that Lack's Complaint fails for two additional reasons: the claims are barred by the statute of limitations and Lack fails to state a claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-00617-RGK-GJS | Date | June 24, 2019 |
|---|---|---|---|
| Title | ***Lack v. Mizuho Bank*** | | |

1. *Statute of Limitations*

Lack alleges that Mt. Gox's website went dark on February 24, 2014, and on February 28, 2014, Mt. Gox filed for bankruptcy. Two weeks later, on March 14, 2014, Lack sued Karpeles for negligence and fraud in the Northern District of Illinois. Lack was dismissed for lack of personal jurisdiction on December 11, 2017, before Karpeles was served in the case. *See Greene v. Mizuho Bank*, 289 F. Supp. 3d 870, 877 (N.D. Ill. 2017). Lack filed the instant action on January 24, 2018.

Karpeles contends that Lack's claims are barred by the applicable statutes of limitations.[2] *See* Cal. Code Civ. Proc. § 338 (establishing that an action for the recovery of personal property has a three-year statute of limitations). But Lack's claims were equitably tolled while he pursued his claims in Illinois. *Martell v. Antelope Valley Hospital Medical Center*, 67 Cal. App. 4th 978, 985 (C.D. Cal. 1998) ("Under equitable tolling, the statute of limitations in one forum is tolled as a claim is being pursued in another forum."). The limitations period therefore only ran during the weeks between Mt. Gox's collapse and Lack initiating suit in Illinois, then again in the month between Lack's dismissal for lack of personal jurisdiction in Illinois and the instant action. At most, two and a half months have elapsed. Accordingly, Lack's claims are not time-barred.

2. *Rule 12(b)(6)*

The Court presumes that Karpeles also moves to dismiss Lack's claims under Rule 12(b)(6) for failure to state a claim. In his Motion, Karpeles outlines the pleading requirements under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2002), then concludes simply that "[w]e cannot even tell what the class action details to defend." (D.'s Mot. 10:28, ECF No. 119.) But Karpeles makes no other argument detailing whether or to what extent Lack's allegations are insufficient under Rule 12(b)(6), and the Court does not find that Lack's claims fail for any other reason.

Accordingly, Karpeles' Rule 12(b)(6) Motion—to the extent that he made one—is denied.

**D.     Failure to Prosecute**

Finally, Karpeles argues that he was served too late, and that the Court should dismiss the case for failure to prosecute. (*See* D.'s Mot. 10:28 ("Plaintiff is required to serve Defendant in X days.").) This argument fails. The Court extended the service deadline after Lack encountered difficulty serving Karpeles in Japan. The Court then extended the trial, motion cut-off, and discovery cut-off dates once Karpeles appeared. Accordingly, Lack's claims will not be dismissed on this ground.

---

[2] Lack correctly points out that the limitations period for Lack's fraud and negligence claims is three years, because Lack seeks recovery of $40,000 of his personal property. Cal. Code Civ. Proc. § 338. Karpeles' assertion that Lack's negligence claim is governed by a two-year statute of limitations is therefore incorrect.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-00617-RGK-GJS | Date | June 24, 2019 |
|---|---|---|---|
| Title | *Lack v. Mizuho Bank* | | |

### V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Karpeles' Motion to Dismiss.

**IT IS SO ORDERED.**

_____ : _____
Initials of Preparer